UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CRAIG ROBERT HENDRY, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:25-cv-00150-MPB-MJD |
| CHRISTINA MORAN, et al. | ) |
| Defendants. | ) |

**Order Dismissing Complaint, Granting Motion, and Opportunity to Show Cause**

Plaintiff Craig Robert Hendry was a prisoner at the Vermillion County, Indiana, Jail when he filed this civil action alleging violations of his First and Fourteenth Amendment rights. Because the plaintiff was a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Hendry advances First and Fourteenth Amendment claims against four defendants: Christina Moran, Thomas Keltz, Jail Commander Jim Miller, and Vermillion County Sheriff Michael Holtkamp. He seeks nominal compensatory damages, as well as punitive, injunctive, and declaratory relief. *See* Dkt. 1.

On January 19, 2025, defendants Jail Commander Moran and Keltz accused Mr. Hendry of violating multiple jail rules including intimidation, unruly/rowdy conduct, and insolence or vulgarity toward staff. *Id*. at 1. Defendants presented their allegations as an "Informal Conduct Report" and moved Mr. Hendry into isolation segregation the same day. *Id*. Defendants also took away Mr. Hendry's "chirping" device, which provides inmates with the ability to send and receive text communication. *Id*. The Informal Conduct Report proposed disciplinary sanctions of indefinite segregation and chirp restriction for thirty days. *Id*. Mr. Hendry refused to sign the report or waive his hearing rights. *Id*. at 2.

Defendants Moran and Keltz told Mr. Hendry they would impose the suggested sanctions on him "no matter what [Mr. Hendry] did regarding the Informal Conduct Report. *Id*. Defendant Keltz documented Mr. Hendry's refusal to sign the report, and defendant Miller signed the report and instructed the jail staff to enforce the disciplinary sanctions. *Id*. As a result, Mr. Hendry was placed in segregation from approximately January 19 until February 1, and he received a chirp restriction from January 19 until February 20. *Id*. "The Defendants took these actions with the intent to cause pain and suffering to [Mr. Hendry] in order to chill his right to free speech under the First Amendment and article 1 section 9 of the Indiana constitution, and with the intent to

retaliate for [his] using protected speech in ways that upset the Defendants while they were moving [him] to isolation." *Id*.

On January 22, while in segregation, Mr. Hendry used a cleaning rag to wipe a window in the day room. *Id*. Upon observing the window, defendants Moran and Keltz ordered Mr. Hendry locked down in his cell. *Id.* Mr. Hendry then received another Informal Conduct Report signed by defendant Moran with information provided by defendant Keltz accusing him of destruction of county property. *Id*. No jail rule violation was alleged and no hearing was held, but Mr. Hendry received three days' lockdown for the violation. *Id*. When Mr. Hendry asked jail staff to stop imposing these sanctions, they told him that defendant Miller "gave orders to impose the sanctions without due process." *Id*. at 3.

### III. Dismissal of Complaint

Applying the screening standard to the facts alleged in the complaint, the complaint must be dismissed for failure to state a claim upon which relief may be granted.

First, Mr. Hendry does not have a constitutional right to avoid false disciplinary charges, such as the charge that the allegedly false charge that he damaged jail property. *Lagerstrom v. Kingston,* 463 F.3d 621, 624-25 (7th Cir. 2006) (due process rights are not violated if a false conduct report is filed). "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson v. McBride,* 188 F.3d 794, 787 (7th Cir. 1999).

Second, to the extent Mr. Hendry alleges that he was placed in disciplinary segregation and lost chirp privileges without due process, the due process clause is triggered only when the government deprives an individual of life, property or liberty. *See Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 459-60 (1989). Decisions and actions by prison

authorities which do not deprive an inmate of a protected liberty interest may be made for any reason or for no reason. *Montgomery v. Anderson,* 262 F.3d 641, 644 (7th Cir. 2001) (when no recognized liberty or property interest has been taken, the confining authority "is free to use any procedures it chooses, or no procedures at all.").

To be entitled to due process, a liberty or property interest must be at stake. *Montgomery v. Anderson,* 262 F.3d 641, 644 (7th Cir. 2001) (when no recognized liberty or property interest has been taken, "the state is free to use any procedures it chooses, or no procedures at all.").

Whether a liberty interest is implicated by disciplinary segregation depends on both the time and conditions of confinement. . . . " *Beamon v. Pollard*, 711 F. App'x 794, 795–96 (7th Cir. 2018) (affirming summary judgment in favor of defendants and concluding that 135 days in segregation—absent any atypical conditions related to confinement—does not violate the Fourteenth Amendment); *see also Hardaway v. Meyerhoff*, 734 F.3d 740, 745 (7th Cir. 2013) (no liberty interest in avoiding 182 days' segregation). "It is well-established that prisoners have a protected liberty interest in avoiding segregated confinement when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Felton v. Brown,* 129 F.4th 999, 1007 (7th Cir. 2025) (internal quotations omitted).

As the Seventh Circuit recently made clear, "[w]e must therefore analyze the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period to determine whether solitary confinement deprives a prisoner of a liberty interest warranting due process protections. A liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Jackson v. Anastasio*, No. 23-1703, 2025 WL 2437947, *5 (7th Cir. Aug. 25, 2025) (internal quotations omitted).

Here, Mr. Hendry has alleged only twelve days of segregation and a loss of texting privileges. He has not alleged any unusually harsh conditions of confinement such that the Court could find he has alleged defendants deprived him of a liberty interest. Further, he has not identified any protected First Amendment Activity for which defendants allegedly retaliated against him.

Finally, to the extent that Mr. Hendry intended to raise a state law claim, the Court relinquishes supplemental jurisdiction over such claim because he has not stated a federal claim in his complaint. *See* 28 U.S.C. § 1367; *O'Grady v. Village of Libertyville*, 304 F.3d 719, 725 (7th Cir. 2002) (affirming district court's discretionary decision not to exercise supplemental jurisdiction over state law claim after it had disposed of federal issues). Any state-law claims must be dismissed without prejudice**.**

Because the Court has been unable to identify a viable claim for relief against any particular defendant, the complaint is subject to dismissal.

### IV. Conclusion and Opportunity to Show Cause

The plaintiff's complaint must be dismissed for each of the reasons set forth above. The plaintiff shall have **through December 15, 2025,** in which to show cause why Judgment consistent with this Order should not issue. *See Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1022 (7th Cir. 2013) ("Without at least an opportunity to amend or to respond to an order to show cause, an IFP applicant's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest, or simply request leave to amend."); *Jennings v. City of Indianapolis*, 637 F. App'x 954, 954–955 (7th Cir. 2016) ("In keeping with this court's advice in cases such as *Luevano* . . . , the court gave Jennings 14 days in which to show cause why the case should not be dismissed on that basis.").

Mr. Hendry's motion for expeditious screening, dkt. 15, **is granted** to the extent this Order screens his complaint. Further, the Court notes that Mr. Hendry has paid the filing fee in full. *See* dkt. 5. Accordingly, Mr. Hendry may disregard the Notice of Deficiency docketed on August 4. Dkt. 11.

**IT IS SO ORDERED.**

Dated: November 24, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

CRAIG ROBERT HENDRY
PO Box 146
Farmersburg, IN 47850